IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LESLIE SLAUGHTER** | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| **MAGELLAN HEALTH, INC.** | § | |
|    Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, LESLIE SLAUGHTER, and files his complaint against Defendant, MAGELLAN HEALTH, INC. ("Magellan"), and in support, states the following:

### I.  PARTIES

1. Plaintiff, LESLIE SLAUGHTER, is an individual who is a citizen of the State of Texas.

2. Defendant, MAGELLAN HEALTH, INC. ("Magellan"), is a Delaware corporation doing business in the State of Texas. Magellan may be served with process by delivery to its registered agent in Texas, Printice-Hall Corporation System +, 211 E. 7th Street Suite 620 Austin, Texas 78701.

### II.  SUMMARY OF ACTION

3. This is an action for monetary damages, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA") and the Texas Commission on Human Rights Act, 1.3.3 Article 5221K, et seq. ("TCHRA"), resulting from Defendant's unlawful employment practices on the basis of disability and retaliation and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

### III. JURISDICTION AND VENUE

4.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA.

5.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Texas.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.     Plaintiff timely filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC.  A copy of the notice of the right to sue is attached as Exhibit A.

### V. BACKGROUND AND FACTS

7.     Mr. Slaughter is disabled.

8.     Mr. Slaughter suffers from Restless Leg Syndrome ("RLS") related in part to severe leg injuries he suffered as a youth, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), schizoid personality disorder, persistent depression disorder, and severe anxiety.  He has continued to receive treatment for these disabilities.  These conditions have created impairments that substantially limit Mr. Slaughter's major life activities.   The disabilities affect his speech, his ability to focus, his ability to respond to extremely stressful situations, his vision, and other activities in his life.

9.     Mr. Slaughter worked for Magellan for over 15 years as a Clinical Pharmacist. Mr. Slaughter performed his job duties from his home office in Willis, Montgomery County, Texas. In 2018, the conditions and symptoms of his disabilities worsened to a point where his ability to perform everyday tasks was greatly hampered.  Although the increased severity of his disability

symptoms were making it difficult to perform his work, he was and remains qualified to perform the work of Clinical Pharmacist. Because his disabilities were affecting Mr. Slaughter's work performance, he approached Magellan for accommodations to assist him with his job duties.

10. In September 2018, Mr. Slaughter submitted a request to Magellan's Human Services for reasonable accommodations in order to perform the essential functions of his job. Once he made his request for accommodations, Magellan became more hostile towards him.

11. Mr. Slaughter's job as a Clinical Pharmacist required that he review and approve requests for pharmacy authorizations for medication prescriptions. These requests were typically made by doctors via phone or fax. The requests required Clinical Pharmacists to interact with the requestors, as well as research documentation and requirements for the appropriate U.S. state. Magellan measured Clinical Pharmacist productivity by how many requests they handled per hour. The fewer states a Clinical Pharmacist was required to work, the less time it would generally take to complete a request. Magellan required that Mr. Slaughter approve requests for five states, while Magellan required that other non-disabled Clinical Pharmacists handle only two to three states at a time. Magellan provided for the use of auxiliary codes that would pause the productivity tracking of the Clinical Pharmacist's review-time allowing them to handle time-consuming tasks without it counting against their productivity time. For example, if a Clinical Pharmacist took a review that lasted for thirty minutes, and they used their auxiliary code to pause the review for ten minutes while they researched the request, the recorded performance time would only be twenty minutes. Magellan allowed non-disabled Clinical Pharmacists to utilize these auxiliary codes. However, Magellan refused to allow Mr. Slaughter to use the codes. Mr. Slaughter requested that he be provided access to the codes, as it would be one of the reasonable accommodations that would help him maintain his performance, and Magellan explicitly denied his request.

12. Mr. Slaughter was not afforded assistance that other non-disabled employees were provided, he was denied breaks, and he was harassed for seeking an accommodation. Instead of engaging with Mr. Slaughter on assisting with his request, Magellan questioned his disabilities and ignored his pleas, effectively excluding him from the protections of the ADA.

13. Magellan required Mr. Slaughter to provide proof from his doctors of his disabilities. He was required to provide detail medical records, which was humiliating and intimidating. After Mr. Slaughter provided Magellan proof of his disability, Magellan refused to accommodate and instead targeted him with increased workloads, increased schedules, and prevented his access to procedures other employees enjoyed that could assist in his performance of his duties.

14. Because Magellan was ignoring his requests, Mr. Slaughter sought the help from a disability consultant and his doctor to assist in identifying reasonable accommodations. His doctor's recommendation of one accommodation to Magellan was that Mr. Slaughter and Magellan utilize the Texas Workforce Commission's ("TWC") Disability Vocational Rehabilitation program to assist in identifying appropriate accommodations. Mr. Slaughter's medical providers and the TWC sent correspondence and requests to Magellan for his job duties in order to assist Magellan in providing the appropriate reasonable accommodations. His medical providers and the TWC identified various accommodations that could assist Mr. Slaughter. Mr. Slaughter's doctor advised Magellan of his conditions and his need for accommodations. Magellan refused to assist.

15. Frustrated at Magellan's disregard of his rights under the ADA and the violation of its own company policies, Mr. Slaughter submitted another formal request for accommodation in October of 2018. He begged for Magellan to provide him the assistance he had requested, and once again reminded Magellan that it was his right under the ADA. Magellan Human Services Division

advised him that they had no reason to believe that he is disabled. Magellan did not accept the medical records Mr. Slaughter provided with his first request and required he provide them more. Mr. Slaughter advised Magellan that he had already provided medical records and doctor recommendations, yet Magellan used Mr. Slaughter's interaction in seeking an accommodation as a basis for reprimanding him for insubordination. Additionally, Magellan continued to increase his workload while ignoring his pleas for ADA assistance.

16. On November 6, 2018, Mr. Slaughter once again sent a formal request for a reasonable accommodation. He informed the Human Services Director that he had been retaliated against and was being denied his ADA right to reasonable accommodations. Mr. Slaughter advised Magellan that the harassment and denial of his accommodations led to worsening of his symptoms. He had already supplied Magellan ample medical proof of his disability. He had already engaged the help of his doctors, a disability consultant, and the TWC to intercede on his behalf with Magellan for reasonable accommodations. His doctors, disability consultant, and TWC had identified available reasonable accommodations. Magellan still would not assist. Frustrated at Magellan's lack of response, Mr. Slaughter advised Magellan that he was filing grievances regarding discrimination.

17. On November 19, 2018, Mr. Slaughter filed his charge of discrimination with the EEOC claiming disability discrimination and retaliation.

18. On December 20, 2018, the Magellan Human Services Director acknowledged that he was aware of Mr. Slaughter's EEOC charge. Magellan informed Mr. Slaughter that he would now be required to engage in the company's "interactive process" for determining whether a reasonable accommodation was required, which would require submitting to even more medical records and evaluations.

19. Mr. Slaughter advised Magellan that he had in fact been complying with the company's interactive process for months, and that he required the assistance of his consultant or an attorney to help represent him in the process. Mr. Slaughter provided documentation from his doctor stating that Mr. Slaughter's disabilities require he have assistance in working with Magellan to find an accommodation. Magellan refused this request.

20. Magellan continued to increase Mr. Slaughter's workload. The harassment continued to increase, and Magellan never provided Mr. Slaughter reasonable accommodations. On or about May 2, 2019, Magellan terminated Mr. Slaughter's employment having never provided a single accommodation.

21. Mr. Slaughter filed and amended charge of discrimination on May 20, 2019 to include the retaliation and discrimination related to his termination.

## VI. DISABILITY DISCRIMINATION

### Count One
### Disability discrimination in violation of the ADA

22. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-21.

23. Title I of the Americans with Disabilities Act of 1990 prohibits discrimination against a qualified person with a disability because of their disability. The law affirmatively requires the employer to make reasonable accommodation to enable the employee to do the essential functions of the job. 42 U.S.C. § 12112(b)(5).

24. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff's disabilities created impairments that substantially limited his ability to perform major life activities. Plaintiff made Defendant aware of his

impairments and made multiple requests to Defendant for reasonable accommodations. Defendant failed to provide a reasonable accommodation which resulted in harm to the Plaintiff.

25. Defendant is prohibited under the ADA from discriminating against Plaintiff because of his disability with regard to disparate and discriminatory treatment in his employment based upon his disability, as compared to similarly situated non-disabled employees.

26. Defendant's method of administration of its procedures and practices, as well as its standards and criteria, resulted in Defendant's refusal to allow Plaintiff to utilize procedures and practices available to other non-disabled employees. The procedures and practices assist non-disabled employees in meeting their quotas and performing their job duties. Defendant's disparate treatment resulted in harassment to Plaintiff.

27. In general, an employer may only require a medical examination and/or inquiry of a current employee if the inquiry or examination is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4). Defendant's requirements for medical proof and inquiries into Plaintiff's medical history were not consistent to a business necessity and were a violation of Plaintiff's privacy, resulting in harassment to Plaintiff.

28. Defendant's violations of the ADA resulted in harassment, denial of reasonable accommodations, and wrongful discharge of Plaintiff's employment.

## Count Two
### Retaliation in violation of the ADA

29. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-21.

30. At all times relevant to this action, Plaintiff was a qualified employee with a disability under the ADA.

31. Plaintiff engaged in protected activity under the ADA on at least one occasion while employed by Defendant. Defendant interfered with and retaliated against Plaintiff's exercise of his rights under the ADA.

32. Defendant intentionally retaliated against Plaintiff and terminated his employment in close temporal proximity to his protected activity associated therewith.

33. Defendant's conduct violates the ADA.

34. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

35. Defendant's unlawful conduct in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## Count Three
### Disability discrimination in violation of the TCHRA

36. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-21.

37. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the TCHRA.

38. Defendant is aware that Plaintiff has an actual disability and has a record of being disabled

39. Defendant is prohibited under the TCHRA from discriminating against Plaintiff because of his disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

40. Defendant violated the TCHRA by refusing to provide reasonable accommodations, unlawfully harassing, unlawfully terminating and discriminating against Plaintiff based on his disability.

41. Plaintiff has been damaged by Defendant's illegal conduct.

42. Defendant's discriminatory conduct, in violation of the TCHRA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

43. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

44. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's rights, thereby entitling him to punitive damages.

## Count Four
## Retaliation in violation of the TCHRA

45. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-21.

46. At all times relevant to this action, Plaintiff was a qualified employee with a disability under the TCHRA.

47. Plaintiff engaged in protected activity in opposition of a discriminatory practice under the TCHRA on at least one occasion while employed by Defendant.

48. Defendant intentionally retaliated against Plaintiff and terminated his employment in close temporal proximity to his protected activity associated therewith.

49. Defendant's conduct violates the TCHRA.

50. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the TCHRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

51. Defendant's unlawful conduct in violation of the TCHRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## VII.   DAMAGES

52. Title I of the ADA adopts Title VII remedies. 42 U.S.C. § 12117(a). Texas state law has the same remedies as those under Title I of the ADA. *See* Tex. Lab. Code §§ 21.258–21.259.

53. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and losses entitling him to the following remedies:

   a. Back pay, including that amount of wages and employment benefits plaintiff would have earned if he had not been subjected to defendant employer's unlawful conduct ("Employment benefits" include sick leave pay, vacation pay, profit sharing benefits, stock options, pension fund benefits, housing or transportation subsidies, bonuses, monetary loses incurred as a result of loss of health, life, dental, or similar insurance coverage.);

   b. Reinstatement;

   c. Front pay;

   d. Compensatory damages in the past, which include economic losses, emotional pain and suffering, inconvenience, mental anguish, expenses incurred in seeking other employment, and loss of enjoyment of life; and

   e. Compensatory damages in the future, which include economic losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## VIII. ATTORNEY FEES

54. Plaintiff is entitled to an award of attorney fees, including expert fees, and costs under 42 U.S.C. § 12205 and/or Tex. Lab. Code §§ 21.259.

## IX. ADDITIONAL DAMAGES

55. In addition to the previously alleged damages (which plaintiff alternatively seeks under this cause of action) Plaintiff seeks exemplary damages because Defendant engaged in discrimination of Plaintiff with either malice, or with reckless indifference to Plaintiff's legally protected rights.

## X. JURY DEMAND

56. Plaintiff requests a trial by jury.

## XI. PRAYER

57. For these reasons, Plaintiff asks for judgment against Defendant for the following:

   a. Reinstatement to his prior job and position;

   b. Back pay and front pay, including all employment benefits;

   c. Compensatory damages in the past, including economic losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

   d. Compensatory damages in the future, including economic losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

   e. Exemplary damages;

   f. Attorney fees and courts costs; and

   g. All other relief the Court deems appropriate, at law and in equity.

Respectfully submitted,

Bradley & Steele, PLLC
3120 Central Mall Dr
Port Arthur, Texas 77642
Tel. (409) 724-6644
Fax. (409) 724-7585

By: */s/ Stephen L. Townsend*
Stephen L. Townsend
Texas Bar No. 24071539
stownsend@bradlaw.net

**COUNSEL FOR PLAINTIFF**